

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
05/31/2013

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 10-70844 |
| HECTOR HERNANDEZ; dba IMAGING, | § | CHAPTER 13 |
| INC; dba IMAGING, INC., ROSA MARIA | § | |
| HERNANDEZ, | § | |
| | § | |
| Debtor(s). | § | JUDGE ISGUR |
| | § | |
| MCALLEN NORTH IMAGING, INC. | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 11-07010 |
| | § | |
| HECTOR HERNANDEZ | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Hector Hernandez's Special Appearance and Motion to Dismiss, (ECF No. 11), is granted. Res judicata (claim preclusion) bars this adversary proceeding.

## Background

Hector Hernandez, the debtor in the main bankruptcy proceeding, was a shareholder, director and an officer of the plaintiff McAllen North Imaging, Inc. (hereinafter, "MNI") from 2002 to 2008.

On September 22, 2008, Raul Garza, Ramiro Garza, Jose David Garza, Juan A. Garza and Leon Garza filed suit against Hector Hernandez and Jesus Castrellon. (ECF No. 26-1 at 1). The suit was brought by the plaintiffs individually and on behalf of MNI. (ECF No. 26-1 at 1). The state court lawsuit complained of acts committed by Hernandez and Castrellon in their positions as officers and directors of MNI, including: (i) not allowing the plaintiffs access to

corporate records; (ii) corporate mismanagement; (iii) diverting corporate funds for personal use (including misuse of the company credit cards); (iv) paying themselves inappropriately large salaries; (v) failing to timely pay third-party creditors; and, (vi) allowing the business to operate after the insurance lapsed. (ECF No. 26-1 at 3-4). The plaintiffs requested actual and exemplary damages, as well as the appointment of a receiver. (ECF No. 26-1 at 5). On February 4, 2010, the state court lawsuit was dismissed with prejudice. (ECF No. 27-2).

On December 2, 2010, Hector Hernandez and Rosa Maria Hernandez filed for Chapter 13 bankruptcy. (Case No. 10-70844, ECF No. 1). The section 341 creditors' meeting was held on January 20, 2011.

MNI filed this adversary proceeding on May 11, 2011 against Hector Hernandez solely. (ECF No. 1). The adversary proceeding complaint alleges that Hernandez breached his fiduciary duty and embezzled funds by, among other things: (i) increasing his salary without authorization; (ii) using corporate credit cards to pay personal expenses; and, (iii) ignoring obligations to creditors (thereby causing harm to MNI); and, (iv) using his insider position to hinder the other shareholders from discovering MNI's true financial condition. (ECF No. 1 at 2-8). The adversary proceeding seeks to establish Hernandez's liability, and to have the resulting debts excepted from discharge under sections 523(a)(2) and 523(a)(4). (ECF No. 1 at 7-9).

Federal Rule of Bankruptcy Procedure 4007(c) requires that complaints to determine the dischargeability of debt be filed no later than 60 days after the first date set for the section 341 creditors' meeting. FED. R. BANKR. P. 4007(c). It is undisputed that MNI did not file its complaint by March 21, 2011 (sixty days from the first setting of the 341 creditors' meeting). There is a live dispute as to when MNI had actual or constructive notice of the bankruptcy, and whether debtors actively strove to prevent MNI from receiving notice.

On June 13, 2011, Hernandez filed a Special Appearance and Motion to Dismiss. (ECF No. 11). In the motion, Hernandez argued that this adversary proceeding is barred because it was not filed within sixty days from the date of the 341 hearing. (ECF No. 11 at 10). The motion was supplemented the following day. (ECF No. 12).

A hearing on this motion was held on August 15, 2011, at which an additional issue was raised—whether the state court dismissal with prejudice of the prior cause of action constitutes res judicata (claim preclusion) with regards to the claims forming the basis of this adversary proceeding. The parties subsequently briefed this issue. (ECF Nos. 26-27).

On December 12, 2011, an additional hearing was held. The Court then indicated its view that this cause of action was barred under the principles of res judicata. MNI argued res judicata does not apply because the state court plaintiffs were prohibited in the prior action from simultaneously filing a derivative action to appoint a receiver and a derivative action for fraud (even though the allegations of fraud constituted part of the evidence justifying the appointment of a receiver). (ECF No. 26 at 6-7) ("Thus, not only is the claim for appointment of a receiver vastly different than a derivative suit for fraud, but having applied to the Court for the appointment of a receiver, the corporation could not have asserted claims in that same lawsuit that would have been the sole province of the receiver it was seeking to appoint.").

The Court allowed MNI the opportunity to brief this issue. The Court reserved ruling on the issue of notice and whether the adversary complaint was timely filed under FRBP 4007(c).

## Analysis

### I. The State Court Complaint

#### a. Factual Allegations

The state court complaint's fact section read as follows:

> Some time prior to September 22, 200, the Defendants approached Plaintiffs with a business proposition. Defendants claimed to have expertise in the management and operation of MRI imaging centers. Defendants wanted to establish such a center, but did not have the financial strength to accomplish the task. Plaintiffs were and are experienced businessmen, but had no experience in the health care industry or medical field. Plaintiffs and Defendants agreed to create a corporation to establish and operate an independent MRI center with Plaintiffs to hold 58% of the stock and serve as the operating management of the corporation and Defendants to hold 40% of the stock and be passive investors. The remaining two percent of the stock was held by Mr. Ricardo Perez. MNI was created on September 22, 2000.
>
> In order to start and maintain the business it was necessary to borrow sums of money from a bank and to acquired equipment on a lease bass. Neither MNI nor Defendants were sufficiently creditworthy to induce lenders and equipment vendors to enter into business relationship with MNI. Therefore, it was necessary for Plaintiffs to guarantee some of these obligations.
>
> In the past few years MNI has not been able to generate sufficient income to pay its debts as they become due. As a result a number of creditors have instituted litigation against MNI and in some cases Plaintiffs as the guarantors. The amount in controversy in these suits is in excess of one million dollars. Plaintiffs have been required to step in and purchase the building in which MNI does business on North 10th Street in McAllen, Texas to avoid having the building foreclosed upon by the bank. Plaintiffs accomplished this by establishing a limited liability company owned by Plaintiffs to purchase the building and lease it to MNI. Consequently, Plaintiffs are MNI's landlord, and MNI is in default in its obligation to pay rent.
>
> Plaintiffs have repeatedly requested access to the books and records of MNI to determine (1) the existence and amount of receivables; (2) the amount of outstanding payables to vendors and others; (3) an accurate tracking of cash receipts and disbursals and (4) evaluation and justification of expenses incurred by the Defendants purportedly on behalf of MNI. Defendants have refused these requests. The limited amount of information received by Plaintiffs indicates corporation mismanagement

>by Defendants and diversion of corporate funds to Defendants' personal use.  Among other things, Defendants as the majority owners and controllers of the corporation have had the corporation pay large salaries to them when neither their performance nor the condition of the corporation made such payments prudent. Defendants have intentionally failed and refused to pay outstanding obligations to third-party creditors of MNI in order to maintain their compensation and lifestyle. By way of example, recently MNI's error and omission coverage was canceled for non-payments, and Defendants permitted operations to continue without insurance. Plaintiffs have been able to inspect Defendants' company issued credit cards which were only to be used to pay business related expenses. Defendants have paid many personal expenses with their company credit cards. For example, one of the Defendants paid a personal bill to a gynecologist. This serves no corporate purpose.

(ECF No. 26-1 at 3-4).[1]

### b. Causes of Action

The state court complaint listed the following in its "Causes of Action" section:

>The foregoing conduct by Defendants constitutes oppression of minority shareholders.
>
>The foregoing conduct constitutes constructive fraud against MNI. Plaintiffs bring this action as a shareholder derivative action. MNI will not bring these claims as a normal suit because it would require Defendants in their capacity as the directors and officers of MNI to elect to bring suit against themselves in their individual capacity.

(ECF No. 26-1 at 5).  MNI alleges that the direct actions in the state court complaint were for fraud, while the derivative action was solely for the appointment of a receiver.  (ECF Nos. 26 at 6, 33 at 4).  This Court assumes, for the purposes of this Memorandum Opinion except where explicitly stated otherwise, that the only derivative action brought in the state court lawsuit was for the appointment of a receiver.

---

[1] There is an inconsistency in this fact section regarding whether the defendants or the plaintiffs were in fact the majority shareholders.

### c. Damages and Remedies

The state court complaint sought the following relief:

> Plaintiffs request that this Court as soon as possible after giving notice and holding a hearing appoint a receiver to manage the day to day operations of the business.
>
> Plaintiffs request that they be awarded their actual damages in an amount in excess of the minimum jurisdictional amount of said court.
>
> Plaintiffs request that they be awarded their actual damages in an amount in excess of the minimum jurisdictional amount of said court.

(ECF No. 26-1 at 5).

## II. Res Judicata (Claim Preclusion)

### a. Texas Preclusion Law

"In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." *Weaver v. Tex. Capital Bank N.A.*, 600 F.3d 900, 906 (5th Cir. 2011) (citing *Marrese v. Amer. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985))

"Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992) (citing *Garcia v. RC Cola-7-UP Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984)).

"Claim preclusion prevents splitting a cause of action. The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Id.* at 629 (internal citations omitted).

In *Barr*, the Texas Supreme Court formally adopted the "transactional approach" to res judicata (claim preclusion):

> The Restatement of Judgments also takes the transactional approach to claims preclusion. It provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose. A "transaction" under the Restatement is not equivalent to a sequence of events, however; the determination is to be made pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.
>
> We conclude that the transactional approach to claims preclusion of the Restatement effectuates the policy of res judicata . . . .

(*Id.* at 631). The Texas Supreme Court later set forth three elements that must be satisfied for res judicata to apply: (i) a prior final judgment on the merits by a court of competent jurisdiction; (ii) the same parties or those in privity with them; and, (iii) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008) (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)).

All parties agree the first two elements are satisfied. A dismissal with prejudice constitutes a final judgment on the merits. *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991). The state court plaintiffs bringing a derivative action on behalf of MNI were in privity with MNI. *See, e.g.*, *Shirvanian v. DeFrates*, 161 S.W.3d 102 (Tex. Ct. App.-Houston 2004) (prior derivative action created a res judicata bar to subsequent derivative action bringing causes of action that were raised or could have been raised in the prior derivative action). The sole dispute is whether or not these claims could (and should) have been raised in the first action.

As excerpted below, the Court initially ruled that all three elements were satisfied and that res judicata (claim preclusion) bars this adversary proceeding. This ruling was subject to MNI successfully demonstrating (as it alleged at that hearing) that the state court plaintiffs were precluded from simultaneously bringing a derivative action seeking the appointment of a receiver

and a derivative action for fraud. Such a showing would negate an essential element of res judicata under the "transactional" approach—that the cause of action could have been brought in the prior proceeding.

### b. Court's Preliminary Ruling

The Court first stated at the December 12, 2012 hearing:

> I do not understand why the state court derivative action lawsuit that was brought could not have sought a remedy [of damages] instead of a receiver . . . for the exact same facts that were alleged to get the receiver. And as a result, I do not understand why the dismissal with prejudice of the state court lawsuit is not a res judicata bar to the prosecution of this lawsuit. I do not know whether in dismissal there was some agreement between the parties that preserved for MNI these claims so that there was some waiver of res judicata. But absent that, it looks to me like res judicata law is pretty unambiguous. That this was, that the derivative suit could have sought the damages, the parties chose not to seek the damages but instead to seek the remedy of a receiver, that there was an agreed dismissal with prejudice, and that I am bound by that.

(Recording of December 12, 2011 Hr'g at 9:07:30—9:09:00). The Court indicated the decision would be altered if MNI were able to demonstrate that under Texas law one cannot bring simultaneous derivative actions seeking a receiver and seeking fraud damages (even where the allegations of fraud constitute part of the evidence supporting appointment of the receiver). The Court allowed the parties to file additional briefs on the issue.

### c. Additional Briefing

MNI's brief failed to support its contention. MNI instead focused on another argument— that a lawsuit requesting equitable relief should not be a res judicata bar to a later lawsuit seeking legal relief, even where res judicata (claim preclusion) would otherwise be applicable:

> To punish the Plaintiff by precluding its adversary action based on res judicata flies in the face of case law that does not require a Plaintiff to assert any other causes of action other than one based upon TCPRC section 64.001(a)(5). To invoke res judicata in this case is to say that not only "could" MNI's fraud claim have been litigated in the receivership suit, but it "must" have been litigated there or it was lost. That is simply

>not the law in Texas. Plaintiff could find no case or legal requirement that requires a plaintiff asserting an equity right to a receiver under TCPRC section 64.001 et seq. to also plead legal claims that corporation might have or risk losing those claims if its receivership suit is adversely decided which in effect was the result of Plaintiff's dismissal with prejudice.

(ECF No. 33 at 5). Instead of demonstrating that the state court plaintiffs were precluded from seeking legal damages for the fraud along with the appointment of a receiver in the prior derivative action, MNI argues that the state court plaintiff's failure to do so does not result in the loss of the cause of action.

The Court disagrees. In the *Barr* case cited above, the Texas Supreme Court expressly overruled its prior decision in *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex. 1973). 847 S.W.2d at 630. In *Griffin*, the Texas Supreme Court had held that a lawsuit brought by a subcontractor against a contractor seeking quantum meruit (equitable relief) was a separate cause of action not barred by a take-nothing judgment issued in a prior lawsuit brought by the same subcontractor for suit on the express contract (legal relief). 496 S.W.2d at 537.[2] In expressly

---

[2] Certain statements from *Griffin*, along with its complex factual background, create the potential for confusion. The defendant in that case (the contractor being sued on the express contract by the subcontractor) filed a crossclaim against the plaintiff subcontractor for breach of contract. The Texas Supreme Court indicated that the court of appeals improperly applied res judicata in ruling that the quantum meruit action was barred because it could have been brought in the first suit:

>The intermediate court reasoned that since claims on the express contract and in quantum meruit could have been urged in the first suit, the final judgment in that suit is res judicata of the present suit. Stated differently, the court has held that a judgment on one claim or cause of action is res judicata of all claims and causes of action arising out of the same transaction and that could have been urged in this suit. This conclusion is sound with respect to counterclaims that are compulsory under the provisions of Rule 97, Texas Rules of Civil Procedure. There is, however, no similar rule requiring a plaintiff to join all claims arising out of the same transaction, and the Court of Civil Appeals has misconstrued our opinion and holding in *Gravis*.

*Griffin*, 496 S.W.2d at 537. The holding of the Texas Supreme Court states that the earlier judgment is nevertheless res judicata as to the subsequent quantum meruit action: "We hold that although the present suit is on a cause of action different from that asserted by plaintiff in the first suit, the earlier judgment is res judicata because the claim in quantum meruit was a compulsory counterclaim to defendants' cross-action for breach of contract in that case." Although confusing, in *Griffin* the Texas Supreme Court clearly rejected the "transactional" approach to res judicata. 496 S.W.2d at 538. ("We have not said or held that a judgment in a suit on one claim or cause of action is necessarily conclusive of all claims and causes of action against the same party, or relating to the same property, or arising out of that transaction."). *Griffin* held that plaintiff's quantum meruit cause of action was not barred due to the fact that the plaintiff could have brought the quantum meruit cause of action in the prior case (i.e., not res

overruling *Griffin*, the Texas Supreme Court noted that the reasoning in *Griffin* did not gel with its more recent res judicata opinions that focused on subject matter overlap:

> The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.

*Barr*, 837 S.W.2d at 630 (citing *Tex. Water Rights Comm. v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979)). No exception was made for situations where a prior lawsuit sought only equitable or legal relief. The Court does not believe that the Texas Supreme Court, if it intended to allow for such an exception, would fail to mention it when explicitly overruling its own prior decision (in which such an exception would be applicable). Moreover, the Texas Supreme Court explicitly disapproved of how the plaintiff in *Griffin* received two opportunities for relief. *Id.* ("Modern rules of procedure obviate the need to give parties two bites at the sameapple, as was done in *Griffin*, to ensure that a claim receives a full adjudication").

MNI failed to demonstrate that under Texas law one cannot bring simultaneous derivative actions seeking (i) a receiver and (ii) fraud damages (even where the allegations of fraud constitute the evidence supporting appointment of the receiver). MNI's alternative argument, that there is an exception to the standard application of res judicata principles where one action seeks only legal relief and the other action seeks only equitable relief, is similarly unpersuasive. The Court's preliminary ruling stands. These causes of action are barred by res judicata (claim preclusion).

---

judicata even though it relates to the same transaction), but that the quantum meruit claim was nevertheless barred because it was a compulsory counterclaim to defendant's breach of contract crossclaim in the prior action.

## Conclusion

The Court will enter a separate Judgment in accordance with this Memorandum Opinion.

SIGNED **May 30, 2013.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE